**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **TAYLOR PATRICK AND** | § | |
| **LEAH PATRICK,** | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 1:12-cv-00155** |
| | § | |
| **LEANDER INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | § | |
| **Defendant** | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND**

**NOW COMES** Taylor Patrick and Leah Patrick, collectively termed Plaintiffs herein, by and through their attorneys, Martin J. Cirkiel of Cirkiel & Associates, P.C. and Mike Zimmerman from the Zimmerman Law Firm, P.C., and bring this, their *Original Complaint* alleging the Defendant Leander Independent School District (hereinafter referred to "Leander ISD") violated the various rights of Taylor as more specifically pled herein. Plaintiffs reserve the right to replead this *Original Complaint* if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof, Plaintiffs would respectfully show the following:

**I. INTRODUCTION**

1. There is not a day that goes by where there is not some story on the news, on the internet or in a magazine about the plight of children, especially those with disabilities, being bullied and harassed at schools. Frankly, it is a national epidemic. Unlike the H1N1 flu which can easily be treated with a vaccine, this type of epidemic is particularly difficult to treat, because the school district is part of the illness.

2.     The school districts will often beat their chests with the proud proclamation that they have a zero-tolerance policy on bullying, but the professional literature confirms what every student on the schoolyard knows — that this "zero-tolerance policy" is the least effective way to deal with the problem of bullying and in fact often tends to make things worse for the victim.

3.     Some of the children who are victimized become violent in an effort to lash out against their tormentors, like what occurred in the Columbine, Colorado. The vast majority of students who are bullied at school suffer in silence — attending school each day with the simple hope and prayer that they simply will be left alone. Unfortunately, those who continue to be bullied and harassed often turn their rage inward, becoming depressed and suicidal, just like what occurred with Taylor

4.     Of course, one other response for a student who has been the object of incessant bullying and harassment is to simply tell their story. In the course of this telling, the victim benefits from a healing effect. The healing and empowerment is even more pronounced when the student makes an effort to tell this story before a Judge in Federal Court, as Taylor has chosen to do in his case, where the bright light and sanitizing effect of federal law shines upon the school district.

## II. NATURE AND PURPOSE OF THIS ACTION

5.     Taylor Patrick has Asperger's Syndrome[1]. He has a unique conversational style, using a vocabulary more advanced than his peers, and possesses social skills significantly behind those of his peers.

---

[1] Asperger's syndrome is a developmental disorder that affects a person's ability to socialize and communicate effectively with others. Children with Asperger's syndrome typically exhibit social awkwardness and an all-absorbing interest in specific topics.

6.      While Taylor was bullied as early as second grade, the bullying really escalated during seventh grade at Running Brushy Middle School in Leander ISD. Taylor was picked on constantly by his classmates at school. Students would regularly throw things at him in class until Taylor would have an outburst in the middle of class, shouting at the students to leave him alone. Ultimately, the bullying became so severe that Taylor was admitted to Shoal Creek Hospital for being suicidal. Upon leaving Shoal Creek, Taylor transferred to Leander Middle School for the remainder of his seventh grade year and all of eighth grade to escape from his tormentors.

7.      For ninth grade, Taylor decided to return to Leander High School, because Leander HS had an Air Force ROTC program and Taylor desired to join the Air Force after high school. Unfortunately, the bullying harassment followed Taylor to Leander HS. Both in his classes and in the ROTC program, Taylor was regularly bullied and harassed by classmates. Taylor complained to teachers almost weekly and Mrs. Patrick also sent multiple emails to teachers and counselors as well personally went to the school regularly to complain about the bullying and harassment. Mrs. Patrick also sought information regarding homebound instruction or a transfer to protect Taylor from the toxic environment at Leander HS.

8.      The bullying and harassment culminated in an incident where four students brutally assaulted Taylor in the Leander HS cafeteria, punching him, kicking him, and ripping at his clothes and hair and sending Taylor to the hospital, ultimately forcing Taylor to leave Leander HS, receiving homebound services for the remainder of his junior year and transferring to a different high school for his senior year.

9.   Leander ISD adopted very few of the *Office of Civil Rights* standards relative to bullying and harassment. Of course, when a school board and administration have not developed a climate sensitive to bullying; whether in general or based upon disability, it is no surprise that well-meaning and caring teachers and other staff members in the school community do not have the sensitivity or tools necessary to prevent and respond to it in the school community where it occurs often before their very eyes.

10.  It is because of this litany of failures that it is likely that school district personnel would discount the complaints of a student that was a victim of bullying, as has occurred with Taylor.

11.  Further, it is because of this and other failures that Plaintiffs brings this suit against the school district for violation of Taylor's civil rights pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") and the Fourteenth Amendment to the Constitution of the United State pursuant to 42 U.S.C. 1983. Such equitable and remedial actions pursuant to this act include, but are not limited to, damages, compensatory services, costs, reimbursement of out-of-pocket expenses, attorney fees and costs, as well as other forms of equitable relief.

### III. JURISDICTION

12.  Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the laws of the United States as noted above.

13.  This Court has jurisdiction to award attorneys fees and costs to the Plaintiffs under 42 U.S.C 1983, 42 U.S.C. 1988, 29 U.S.C. 794a, pursuant to 42 U.S.C. §2000d et seq.

## IV. VENUE

14.    Under 28 U.S.C. § 1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs claims occurred in the Western District of Texas.

## V. CONDITIONS PRECEDENT AND ADMINISTRATIVE EXHAUSTION

15.    Plaintiffs believe administrative exhaustion is not required in this case as it would be futile. Regardless, Plaintiffs have filed an administrative action pursuant to the *Individuals with Disabilities Education Act* ("IDEA"), 20 U.S.C. §1415(1) and 19 T.A.C. §89.1185(p), contemporaneously with this complaint.

## VI. PARTIES

16.    Taylor Patrick was born February 18, 1992, is a citizen of the State of Texas and resides with his mother, Leah Patrick, in Williamson County, Texas. At all pertinent times during the period in question, Taylor was a student in the Leander Independent School District and was a student with a disability as contemplated by Section 504.

17.    Leah Patrick is a citizen of the State of Texas and a resident of Williamson County and brings forward this complaint accordingly for out-of-pocket expenses incurred as a result of Defendant's actions.

18.    Defendant Leander Independent School District is a school district organized under the laws of the State of Texas, a recipient of federal funds, and at all relevant times was responsible for the care, management and control of all public school business within its jurisdiction as to Plaintiff Taylor Patrick, training of teachers at the school as to safety, abuse and neglect of minors, and supervision of students within the district, for on-campus and off-campus activities and for his course of study. It may be served through

its superintendent, Dr. Bret Champion, at P.O. Box 218, Leander, Texas 78646-0218.

## V. STATEMENT OF FACTS

19.    Taylor Patrick has Asperger's Syndrome. He has a unique conversational style, using a vocabulary more advanced than his peers, and possesses social skills significantly behind those of his peers.

20.    While Taylor was bullied as early as second grade, the bullying escalated during Taylor's time at Running Brushy Middle School in Leander ISD. Taylor was picked on constantly by his classmates at school, who would regularly throw things at him in class until Taylor would have an outburst in the middle of class, shouting at the students to leave him alone.

21.    On September 1, 2005, Ms. Patrick sent a letter to the Leander ISD board complaining that Taylor was being subjected to harassment, ridicule, humiliation, and physical harm at Running Brushy Middle School.

22.    Ultimately, the bullying became so severe that, during seventh grade, Taylor was admitted to Shoal Creek Hospital for being suicidal. Upon leaving Shoal Creek, Taylor finished middle school at Leander Middle School to get away from his tormentors.

23.    For ninth grade, Taylor decided to return to Leander High School, because Leander HS had an Air Force ROTC program and Taylor desired to join the Air Force after high school. Unfortunately, the bullying worsened at Leander HS.

24.    Upon his transition to Leander HS in 2007, Taylor was given an *Individualized Educational Plan* ("IEP"), at least partially because of the bullying issues. He was placed in Program Achieve, where they worked on coping strategies for Taylor to deal with bullying, but nothing was done about to actually stop the bullying.

25.   Taylor's classmates would call him names like "faggot", "autism-boy", "dumbsh*t", and "grummit."[2] Students would throw things at him in class, shoot spitwads at him, whisper about him, and point and laught at him. Some of the female students would write him fake love letters and one male students would pretend to come onto him. Students would regularly and intentionally bump into Taylor in the hallways. The bullying and harassment during class would often cause Taylor to either have a verbal outburst in class or would just cause Taylor to get up and leave the classroom. Teachers would acknowledge the issues Taylor was having with classmates but nothing was done to curb those problems.

26.   In January, 2008, Taylor was being picked on in his science class. After he had a meltdown in class about his classmates teasing him, his teacher moved him to the back of the class so that the other students couldn't bother him, but as would become the norm, nothing was done to the bullies.

27.   Even in the ROTC program, Taylor entire purpose for attending Leander HS, he wasn't safe. In ROTC, he was constantly tormented by a classmate named Blake Douglas. Blake would constantly call Taylor names like "faggot" and "grummit" and would regularly threaten to beat Taylor up. Taylor verbally complained to Colonel Matson, the ROTC teacher, on numerous occasions, but nothing was done.

28.   In September, 2008, Ms. Patrick sent an email to Colonel Matson and Michael Henri, Taylor's tracking teacher, complaining about Blake's bullying of Taylor, even telling them that Taylor was considering leaving the ROTC program because of the bullying, but

---

[2] "Grummit" is a derogatory term that is prevalent in the Leander ISD community used to describe the class students on the fringes of high school society. On April 4, 2011, Meagan Allen, another Leander HS and ROTC student who was considered a "grummit," shot and killed herself in a bathroom at Leander HS.

again, nothing was done.

29.     Just a few days later, Ms. Patrick sent an email to Mr. Henri and to Lori Arcos, a school

psychologist with Leander ISD, complaining that students were calling Taylor offensive

names and that the bullying may be causing his struggling in Geometry class. As usual,

nothing was done to stop the bullying.

30.     In October, 2008, Ms. Patrick again sent an email to Mr. Henri and to Ms. Arcos

complaining of bullying at the school, notifying them that Taylor "is on the verge of a

breakdown due to many negative and cruel things that have been happening to him at

school" and that if the bullying continues, Taylor may either need to be provided

homebound services or receive all of his classroom instruction in the Program Achieve

setting rather than the regular classroom setting.

31.     Later that same day, Ms. Patrick sent another email to Mr. Henri letting him know that

the kids bullying Taylor the most were in his World History and Geometry classes.

32.     In January, 2009, Ms. Patrick sent an email to Mr. Henri telling him that Taylor "hates

school" and "is depressed." She also asked what she needed to do in order to have Taylor

receive homebound instruction for his junior and senior years.

33.     In March, 2009, Taylor was diagnosed with a pituitary tumor. On April 1, 2009, Taylor

had surgery to remove the tumor. Subsequently, Taylor received homebound services for

about three weeks.

34.     In April, 2009, Ms. Patrick copied Ms. Arcos and Mr. Henri on an email to Dr. Schneier,

Taylor endocrinologist, discussing Taylor's issues at schools with bullies and not feeling

safe and requesting that Dr. Schneier sign off on homebound services for Taylor.

35. During the fall of 2009, Ms. Patrick regularly complained to Mr. Henri and to Ms. Lapan, Taylor's English teacher, that Taylor was having trouble in English class because of students harassing him in that class causing his grades to suffer.

36. That fall, Taylor's tumor grew back. On November 10, 2009, Taylor had to have another brain surgery to try to remove the tumor.

37. In February, 2010, Ms. Patrick again requested information on transferring Taylor out of Leander HS because the bullying and harassment would not stop.

38. On or around March 2, 2010, Taylor had a verbal altercation with classmate Jasmine Watson. That same day in the cafeteria during lunch, Jasmine, her brother Charles Watson, and two friends sat down at Taylor's table and began teasing him. Charles then confronted Taylor about the verbal altercation between Taylor and Jasmine earlier that day, threatening to smash Taylor's face down into his food. Taylor responded that he didn't think violence would solve anything, at which the other students laughed. Taylor stood up and walked away from the table, pouring his milk bottle out on Jasmine. Jasmine, Charles, and the other two students then tackled Taylor from behind and began punching him, kicking him, scratching him, and pulling his hair. They hit, kicked, and scratched Taylor in the nose, face, back, neck, head, and shoulders. The four students punched and kicked him at least 20 times before they were finally pulled off of him.

39. Ms. Patrick came to school to find Taylor in the nurse's office with a bloody nose. Despite Taylor's two brain surgeries, of which Leander ISD was aware, Leander ISD did not call for emergency medical services for Taylor. Ms. Patrick took Taylor to the Cedar Park Hospital Emergency Room where he had a CT scan and x-rays. Additionally,

Taylor's cell phone and eyeglasses were broken in the assault.

40.     As a result of the constant bullying and harassment and finally the brutal assault, Taylor's depression worsened and he began to have nightmares. Ultimately, as Leander ISD did nothing to protect Taylor at Leander HS, Taylor had to withdraw from Leander HS for the remainder or his junior year, receiving homebound services, and was then attended Vista Ridge HS for his senior year to get away from his tormentors.

41.     In addition to the numerous emails, during Taylor's freshman, sophomore, and junior years, Ms. Patrick regularly went up to school and phoned the school to complain about the bullying to Ms. Arcos, Mr. Henri, Colleen Roundhill, Taylor's tracking teacher during his ninth grade year, and Assistant Principal Mike Gossett. Ms. Patrick specifically complained about Jasmine Watson being one of the students always terrorizing Taylor ever since Taylor's freshman year.

42.     Furthermore, Taylor complained to teachers at least once per week that other students were picking on him and also regularly complained to Ms. Arcos, Mr. Henri, and Ms. Roundhill.

43.     The evidence in this case shows that the Leander Independent School District adopted very few of the *Office for Civil Rights* standards relative to bullying and harassment. These standards include, but are not limited to the following:

    a.      A clear recognition by the school board, superintendent and professional staff about the urgency of the bullying and harassment problem. They can evidence their commitment to the problem by identifying it, developing policies and procedures, developing preventative measures, developing remedial measures and

setting up practices to monitor the program.

44.    In regard to identifying bullying:

a.    Identifying people and agencies that can help develop effective prevention and response strategies or compiled a library of useful materials;

b.    assessing the school climate to determine the prevalence of harassment that exists and the potential for hate-motivated violence; and

c.    conducting a school "bullying assessment" in general or one related to persons with disabilities.

45.    In regard to developing policies and procedures:

a.    adopting a written anti-harassment policy and assure the policy is clearly communicated to all members of the school community;

b.    developing a policy to flexibly apply response mechanisms to both the victim and the perpetrator, taking into account the parties' ages and the context of the behavior;

c.    instituting specific policies and measures to respond immediately and effectively when harassment occurs to stop the harassment and prevent recurrence;

d.    appointing an appropriate school official(s) to become familiar with pertinent civil and criminal laws at the state, local, and federal levels, so that they are able to recognize possible civil rights violations, hate crimes and other criminal acts;

e.    developing guidelines and procedures for collaboration with law enforcement officials, make appropriate referrals to outside agencies and designate liaison personnel;

f. Having policies that specifically identify "bullying" based upon disability in the school rules;

g. providing a Crisis Intervention Plans be in place to minimize the possibility of violence or disruption of the educational process;

h. have District-level personnel and individual school sites form continuing partnerships with parents and the community to prevent hate crimes and harassing behaviors;

i. providing staff training and professional development programs to support the district's anti-harassment efforts;

j. providing policies that assure that all harassment incidents are carefully documented and incidents are reported to outside authorities as required; and

k. developing a formal grievance procedure and takes steps to make sure it is working properly.

46. In regard to developing preventative measures:

a. creating an effective anti-harassment program in consultation with parents, students, and community groups;

b. developing a curriculum with strategies to foster respect and appreciation for diversity;

c. instituting age appropriate student activities to prevent or reduce prejudice and conflict in this area; In regard to developing remedial measures:

d. training staff in recognizing bullying and harassment relative to persons with a disability;

e.      providing assemblies on bullying and disability discrimination,

f.      providing programs in classroom settings;

g.      posting signs in classrooms prohibiting bullying and listing its consequences;

h.      posting signs in classrooms prohibiting disability discrimination and listing its consequences;

i.      encouraging students to help classmates who are being bullied and to report bullying;

j.      publishing anti-harassment statements widely to the general school community;

k.      developing strategies to prevent bullying in known "hot spots;" and

l.      assuring school personnel and students were held accountable for their actions.

47.    In regard to setting up practices to monitor the program:

a.      appointing a Compliance Coordinator to train School personnel;

b.      continually monitored the school climate and promptly address problems that could lead to harassment or violence or that indicate that harassment could be occurring;

c.      regularly assessing the effectiveness of its anti-harassment efforts; and

d.      forming a "bullying prevention coordination team" at the school, to both prevent and monitor the victimization of students with disabilities.

48.    Taylor and Ms. Patrick perceived the district's actions, omissions, statements and mannerisms as intimidating each time they brought complaints to administrators or staff.

49.    Additionally, school staff did not investigate any of their complaints.

50.    Nor did the administrators at Running Brushy Middle School or Leander High School

receive any training on disability discrimination.

51.     Nor did the teachers at Running Brushy Middle School or Leander High School receive any training on disability discrimination.

52.     Nor did the administrators at Running Brushy Middle School or Leander High School receive any training on bullying and harassment.

53.     Nor did the teachers at Running Brushy Middle School or Leander High School receive any training on bullying and harassment.

54.     Nor were there any student assemblies or training on disability discrimination during the time Taylor attended Running Brushy Middle School or Leander High School.

55.     Nor were there any student assemblies or training on bullying and harassment during the time that Taylor attended Running Brushy Middle School or Leander High School.

56.     Nor were there any classroom activities or programs designed to foster an inclusive culture and school environment that was absent of bullying and harassment.

57.     The district never offered a transfer to Taylor

58.     The district never offered a one-to-one aide for Taylor

59.     The district never offered individualized counseling for Taylor

60.     The district never offered individualized counseling for the perpetrators.

61.     The Board members, administrators and the superintendent did not recognize the urgency of the problem and identify people/agencies that can help develop effective prevention and response strategies.

62.     The Board members, administrators and the superintendent did not compile a library of useful materials.

63.     The Board members, administrators and the superintendent did not work on creating an effective anti-harassment program in consultation with parents, students, and community groups.

64.     The Board members, administrators and the superintendent did not appoint a Compliance Coordinator to train School personnel.

65.     The Board members, administrators and the superintendent did not assess the school climate to determine the prevalence of harassment that exists and the potential for hate-motivated violence.

66.     The Board members, administrators and the superintendent did not adopt a written anti-harassment policy and assure the policy is clearly communicated to all members of the school community

67.     The Board members, administrators and the superintendent did not promulgate a culture that let school personnel and students know they would be held accountable for their actions.

68.     The Board members, administrators and the superintendent did not develop a formal grievance procedure and takes steps to make sure it was working properly.

69.     The Board members, administrators and the superintendent did not have instructional personnel use or supplement a district's curriculum and strategies to foster respect and appreciation for diversity.

70.     The Board members, administrators and the superintendent did not institute, improve, or expand age appropriate student activities to prevent or reduce prejudice and conflict.

71.     The Board members, administrators and the superintendent did not institute specific

measures to respond immediately and effectively when harassment occurs to stop the harassment and prevent recurrence.

72.   The Board members, administrators and the superintendent did not flexibly apply response mechanisms to both the victim and the perpetrator, taking into account the parties' ages and the context of the behavior.

73.   The Board members, administrators and the superintendent did not continually monitor the school climate and promptly address problems that could lead to harassment or violence or that indicate that harassment could be occurring.

74.   The Board members, administrators and the superintendent did not appoint appropriate school officials to become familiar with pertinent civil and criminal laws at the state, local, and federal levels, so that they are able to recognize possible civil rights violations, hate crimes and other criminal acts.

75.   The Board members, administrators and the superintendent did not develop guidelines and procedures for collaboration with law enforcement officials, make appropriate referrals to outside agencies and designate liaison personnel.

76.   The Board members, administrators and the superintendent did not assure crisis intervention plans were in place to minimize the possibility of violence or disruption of the educational process.

77.   The Board members, administrators and the superintendent did not have District-level personnel and individual school sites form continuing partnerships with parents and the community to prevent hate crimes and harassing behaviors.

78.   The Board members, administrators and the superintendent did not provide Staff training

and professional development programs to support the district's anti-harassment efforts.

79.    The Board members, administrators and the superintendent did not assure that all harassment incidents are carefully documented and incidents are reported to outside authorities as required.

80.    The Board members, administrators and the superintendent did not regularly assess the effectiveness of its anti-harassment efforts.

### VI. CLAIMS FOR RELIEF PURSUANT TO SECTION 504

81.    Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

82.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and its implementing regulations require that each entity of the state that receives federal funding, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules.

83.    To the degree that a policy or practice hinders honest consideration of a disabled child's unique needs, and fails to accommodate that child's disability, it violates Section 504. As well, Section 504 requires districts to evaluate students who are suspected of needing special education or related services because of a disability.

84.    Plaintiffs assert that Defendant Leander ISD has violated Taylor's rights pursuant to Section 504. Defendant's practices and/or proposed actions, set out in detail above, have, together and separately, contributed to violating his rights under Section 504, federal rules and regulations promulgated pursuant thereto, and related state law.

85.   Defendant Leander ISD failed to provide Taylor a Free Appropriate Public Education ("FAPE") for students with disabilities as required under Section 504 of The Rehabilitation Act of 1973 in the following manner and particulars:

   a.   Failed to satisfy the requirements of Section 504 regarding the development of culture that was sensitive to issues of bullying and harassment based upon disability, as noted in Section VII(B) above;

   b.   Failed to investigate the complaints that Taylor, a student with a disability, was a victim of bullying and harassment based upon that disability;

   c.   Failed to provide Taylor a safe environment so that he could enjoy the academic and non-academic benefits of the educational environment, to which he justly deserved;

   d.   Generally accommodate his disability, through education and services commensurate with his disability and his unique and individualized needs.

86.   In addition and in the alternative, Defendant Leander ISD had notice that students were harassing Taylor due to his disability and was deliberately indifferent to the harassment, creating a hostile educational environment and violation Section 504 thereby.

### VII. CLAIMS PURSUANT TO 42 U.S.C. 1983

87.   Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

88.   The acts and omissions of the School District deprived Taylor of his rights to life, liberty and bodily integrity, thereby violating the Due Process Clause of the Fourteenth Amendment, for which Defendants are liable to Plaintiffs pursuant to 42 U.S.C. c1983.

89.    In addition and in the alternative, the School District singularly discriminated against Taylor *as a class-of-one* in failing to follow Board policies in response to incidents of bullying and harassment against him, thereby violating the Equal Protection Clause of the Fourteenth Amendment, for which Defendants are also liable to Plaintiffs pursuant to 42 U.S.C. §1983.

90.    In addition and in the alternative, the School District failed to follow Board policies in response to incidents of bullying and harassment against Taylor because Taylor was a "grummit", thereby violating the Equal Protection Clause of the Fourteenth Amendment, for which Defendants are liable to Plaintiffs pursuant to 42 U.S.C. §1983.

## VIII. RATIFICATION

91.    Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

92.    The School District ratified the acts, omissions and customs of district personnel and staff. As a result, the School District is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of Taylor.

## IX. PROXIMATE CAUSE

93.    Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

94.    Each and every, all and singular of the foregoing acts and omissions, on the part of Defendants, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## X. DAMAGES

95.    As a direct and proximate result of the Defendants' conduct, Taylor has suffered the

following injuries and damages, which he is entitled to recover herein within the jurisdictional limits of this court:

    a.   Physical pain in the past;

    b.   Mental anguish in the past;

    c.   Mental anguish in the future;

    d.   Medical and mental health expenses in the past;

    e.   Medical and mental health expenses in the future; and

    f.   Physical impairment in the past.

96.    As a direct and proximate result of the Defendants' conduct, Leah Patrick has suffered Out-of-pocket expenses incurred but for the acts and omissions of the Defendants, which she is entitled to recover herein within the jurisdictional limits of this court:.

## XI. ATTORNEY FEES

97.    Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth.

98.    It was necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs under 42 U.S.C. §1988(b) and 29 U.S.C. § 794a pursuant to 42 U.S.C. § 2000d *et seq.*

## XII. LIMITATIONS

99.    Plaintiffs reasonably believe that the Defendants will argue that all or part of Taylor's claims are barred by the affirmative defense of limitations. Plaintiffs rely upon any and all relevant statutory and common law tolling theories.

## XIII. DEMAND FOR JURY TRIAL

100.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all

issues in this matter.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray for judgment against Defendant and request an order including but not limited to the following relief:

a.     A finding that Taylor Patrick was a victim of discrimination based upon disability, as contemplated by the Section 504 of the Rehabilitation Act of 1973, during the periods claimed, in total or in part;

b.     A finding that Leander ISD denied Taylor Patrick equal protection of the law in violation of the Fourteenth Amendment to the Constitution of the United States during the periods claimed, in total or in part;

c.     A judgment in favor of Taylor Patrick in an amount sufficient to fully compensate him for the elements of damages enumerated above;

d.     An order directing Defendant to pay or reimburse Leah Patrick for all costs of his care, including, but not limited to, therapeutic costs and other out-of-pocket, medical and transportation costs for treatment;

e.     An order directing Defendant to effectuate the various anti-bullying and harassment requirements as set forth by the *Office for Civil Rights* operative case-law;

f.     An order directing Defendant to take any and all other specific actions required by Section 504 of the Rehabilitation Act of 1973;

g.     An order declaring Plaintiff as prevailing party so that Defendant would be required to pay or reimburse Taylor, by his next friends for all costs of

preparation and trial of this cause of action, including, but not limited to, filing fees, costs of representation, advocate fees, attorney fees, and expert witness fees, incurred by them up to and through trial, and for its appeal if required, pursuant to 42 U.S.C. §1988 and 29 U.S.C. § 794a pursuant to 42 U.S.C. § 2000d *et seq.*, together with pre- and post-judgment interest, and court costs expended herein; and

h.    Such other relief as the Court may deem just and proper in law or in equity.

> Respectfully submitted,
>
> Cirkiel & Associates, P.C.
>
> /s/ Martin J. Cirkiel
> Mr. Martin J. Cirkiel, Esq.
> State Bar No.: 00783829
> 1901 E. Palm Valley Boulevard
> Round Rock, Texas 78664
> (512) 244-6658 [Telephone]
> (512) 244-6014 [Facsimile]
> marty@cirkielaw.com
>
> Mr. Michael Zimmerman, Esq.
> The Zimmerman Law Firm
> 301 W. Waco Drive
> Waco, Texas 76710
> (254) 752-9688 [Telephone]
> (254) 752-9680 [Facsimile]
> mzimmerman@thezimmermanlawfirm.com
>
> **ATTORNEY FOR PLAINTIFFS**